**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------

Nahshon Jackson, Kevin Elmore, Charles Ransom ,
Larry Ross, Dexter Robinson, Davey Shark,
Darryl Kroger, Michael Hopps, Robert Harris,
Edwin Myers, Patrick Snow,
**AND OTHERS SIMILARLY SITUATED**



# 16CV 9705

**COMPLAINT**
**Jury Trial Demanded**

Plaintiffs,

- against -

Andrew M. Cuomo, New York State Governor,
Tina M. Stanford, Chairperson, New York State
Board of Parole,

Defendants.

-------------------------------------------------------------------

## JURISDICTION & VENUE

1. In this class action for declaratory relief and injunctive relief to redress the deprivation of rights secured to Plaintiffs, jurisdiction of this court is invoked pursuant to 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 1983.

2. The jurisdiction of this court is invoked to secure protection under the Civil Rights Act of 1871, providing for injunctive and other relief against an impermissible increase in the punishment for a crime resulting from statutes that govern parole or early release, in violation of the **Ex Post Facto Clause** of Article I, Section 10 of the United States Constitution and 42 U.S.C.A. § 1983, providing for the redress of deprivation of rights under color of law; and 42 U.S.C.A. § 1988, providing for the protection of all persons in their civil rights.

3. The increase of punishment practices alleged below were and are being committed within the Southern, Northern, Eastern, and Western Districts of New York.

–2–

## PARTIES

4. Plaintiff Nahshon Jackson, is a citizen of the United States who is being held in a New York State Prison purportedly serving an indeterminate sentence with a minimum period of imprisonment fixed by a court.

5. Plaintiff Kevin Elmore, is a citizen of the United States who is being held in a New York State Prison serving an indeterminate sentence with a minimum period of imprisonment fixed by a court.

6. Plaintiff Charles Ransome, is a citizen of the United States who is being held in a New York State Prison serving an indeterminate sentence with a minimum period of imprisonment fixed by a court.

7. Plaintiff Robert Harris, is a citizen of the United States who is being held in a New York State Prison serving an indeterminate sentence with a minimum period of imprisonment fixed by a court.

8. Plaintiff Larry Ross, is a citizen of the United States who is being held in a New York State Prison serving an indeterminate sentence with a minimum period of imprisonment fixed by a court.

9. Plaintiff Dexter Robinson, is a citizen of the United States who is being held in a New York State Prison serving an indeterminate sentence with a minimum period of imprisonment fixed by a court.

10. Plaintiff Davey Shark, is a citizen of the United States who is being held in a New York State Prison serving an indeterminate sentence with a minimum period of imprisonment fixed by a court.

11. Plaintiff Darryl Kroger, is a citizen of the United States who is being held in a New York State Prison serving an indeterminate sentence with a minimum period of imprisonment fixed by a court.

12. Plaintiff Michael Hopps, is a citizen of the United States who is being held in a New York State Prison serving an indeterminate sentence with a minimum period of imprisonment fixed by a court.

13. Plaintiff Edwin Myers, is a citizen of the United States who is being held in a New York State Prison serving an indeterminate sentence with a minimum period of imprisonment fixed by a court.

14. Plaintiff Patrick Snow is a citizen of Jamaica who is being held in a New York State Prison serving an indeterminate sentence with a minimum period of imprisonment fixed by a court.

15. Defendant Andrew Cuomo is the Governor of the State of New York who is responsible for signing into law Chapter 62 of the Laws of 2011. He is sued in his official capacity for failure to take care that the laws are faithfully executed.

16. Defendant Tina M. Stanford is the Chairperson of the New York State Board of Parole serving at the pleasure of Defendant Cuomo and is responsible for the administrative functions and daily operations of the parole board and its staff. She is sued in her official capacity for enforcing the unconstitutional parole practice and policy.

## CLASS ACTION

17. Plaintiffs bring this action on behalf of themselves and all other persons similarly situated pursuant to Rule 23 (a) and (b) of the Federal Rules of Civil Procedure. The class that Plaintiffs represent is composed of Prisoners of the State of New York serving indeterminate sentences who minimum period of imprisonment has been fixed by a New York State Court, and who have been, and continue to be or might be adversely affected by the practices complained of in this complaint.

18. There are common questions of law and fact affecting the rights of the members of this class who are, were, and continue to be limited, classified, and discriminated against in ways which deprive them of due process and equal protection of the laws and otherwise adversely affect their status as Prisoners due to the seriousness of their offenses or prior criminal records.

19. These common questions predominate over any questions affecting only individual members of this class. These persons are so numerous that joinder of all members is impracticable. A common relief is sought. The interest of this class are adequately represented by Plaintiffs.

20. Defendants have acted or refused to act on grounds generally applicable to the class. Under these circumstances, the common interest of the class are such that any interest of the individual members of the class is completely out-weighed by the desirability of concentrating the controversy in a single forum and a class action is superior to any other available method for the fair and efficient adjudication of this controversy.

## STATEMENT OF CLAIM

21. Plaintiffs contend that upon the New York State Legislature changing Executive Law §§ 259-c (4) and 259-i (2)(c), it created a sufficient or substantial risk that the class of New York State Prisoners serving indeterminate sentences whose minimum period of imprisonment ( "MPI" ) has been fixed by a court, will serve longer sentences as a result of the change, in violation of the **Ex Post Facto** clause.

22. Prior to the enactment of Chapter 62 of the Laws of 2011, Plaintiffs had a constitutional expectation that their parole applications would be evaluated under the laws in effect when they were convicted, and a reasonable expectation of being released on parole, provided that they satisfied the criteria set forth in Executive Law § 259-i (2)(c).

**Chapter 904 Of The Laws Of 1977**

23. Plaintiffs had a constitutional expectation that their parole applications would be evaluated under Executive Law § 259-i (2)(c) enacted by Chapter 904 of the Laws of 1977 in effect when they were convicted.

24. Discretionary release on parole was not required to be granted merely as a reward for good conduct or efficient performance of duties while confined, but after considering if there is a reasonable probability that, if Plaintiffs are released, they will live and remain at liberty without violating the law, and that their release is not incompatible with the welfare of society and will not so deprecate the seriousness of their crimes as to undermine respect for law.

25. In making the parole release decision for persons who MPI has been fixed by a court, the relevant guidelines adopted pursuant to Executive Law § 259-c (4) required the parole board to consider (i) the institutional record; (ii) performance, if any, as a participant in a temporary release program; and (iii) release plans.

26. In making the parole release decision for persons whose MPI was not fixed pursuant to § 259-i (1), in addition to the factors listed in § 259-i (2)(c), the Board was required to consider the factors listed in § 259-i (1)(a) with respect to persons who were convicted of a Class B or C felony.

27. In any case where a person is received in an institution under the jurisdiction of the department of correctional  services ("DOCS") with an indeterminate sentence, and  the court has not fixed a MPI, the seriousness of the offense and prior criminal record was required to be used as factors by the Board to determine the MPI to be served prior to parole consideration.

28. Upon enacting Executive Law § 259-i, on April 11, 1977 the legislature found that "the parole board must articulate the criteria which guide the process of fixing minimum periods of imprisonment and making parole release determinations so as to provide a clearer understanding of the parole process. The adoption and use of written criteria will facilitate notice of the standards by which an offenders conduct will be evaluated."

29. Governor Hugh L. Carey stated in his April 11, 1977 Memorandum that "by removing needless statutory restraints on the Boards power to fix minimum sentences, the bill enables the fixing of realistic minimum sentences which take into account the gravity of the offense and the offender's past criminal history, among other factors. Concomitantly, it permits a reasonably expectation of parole when a minimum sentence, fixed in accordance with the guidelines, has been served, provided that the inmate fulfills the requirements of statute."

30. The legislature clearly intended to use the seriousness of the offense and prior criminal record as factors for persons who minimum period of  imprisonment has not been fixed by the court or board.

**Chapter 873 Of The Laws Of 1980**

31. However, giving the Board authority to fix a MPI was subsequently rejected by the enactment of Chapter 873 of the Laws of 1980 where Senator Christopher J. Mega stated in his Memorandum in Support of  Senate Bill 8527-A that "there is nothing on which the Board's decision can be based which was not before the court at the time sentence was imposed ( at least all of these factors should have been before the  court) ; and most of these factors consist of matters the court is better able to ascertain and evaluate (e.g., seriousness of the offense, mitigating and aggravating factors, etc.)."

32. Governor Carey stated in his July 1, 1980 Memorandum that "the Board is performing a role which could be performed by the sentencing court. In view of the fact that the court has primary responsibility for sentencing, it is not inappropriate to require it to fix the minimum sentence."

33. The legislature clearly intended to authorize the use of the seriousness of the offense and prior criminal record as factors at sentencing, and not in making parole release decisions.

## Chapter 62 Of The Laws Of 2011

34. Plaintiffs contend that the 2011 Amendment of Executive Law § 259-i has the effect of repealing by implication those provisions of the original act of Chapter 904 of the Laws of 1977 that cannot be reconciled with it, particularly where the new amendment deals specifically with the matter in issue - **Ex Post Facto** - aimed at laws that retroactively increase punishment for criminal act.

35. Executive Law § 259-c (4) was amended to remove the reference to the establishment of written guidelines for its use in fixing of MPI, and to substitute risk assessment procedures for these out dated guidelines.

36. These outdated guidelines under repealed Executive Law § 259-i (1)(a) required the Board to consider the seriousness of the offense and prior criminal record as the only two factors used in fixing the MPI.

37. However, § 259-i (2)(c)(A) was amended to add thereto the out dated guidelines for the purpose of authorizing the Board to act as if it is still responsible for sentencing decisions by re-examining the underlying crime and criminal history for purpose of increasing punishment.

38. Plaintiffs contend that authorizing the Board to use the seriousness of the offense and prior criminal history as factors to impermissibly increase the term of imprisonment for Plaintiffs who experienced change of circumstances rendering them suitable for parole release after serving their MPI fixed by a court, violates **Ex Post Facto** clause.

39. Plaintiffs had a reasonable expectation of being released on parole, provided that they satisfied the criteria set forth in Executive Law § 259-c (4).

40. The substituted risk assessment procedures are required to incorporate risk and needs principles to measure the rehabilitation of Plaintiffs appearing before the Board, the likelihood of success of Plaintiffs upon release, and assist members of the Board on determining which Plaintiffs may be released to parole supervision.

41. Defendants adopted COMPAS (Correctional Offender Management Profiling for Alternative Sanctions) as the risk assessment tool it would utilize to measure three types of overall risk : risk of felony violence, risk of arrest, and risk of absconding.

42. COMPAS also compiles what are termed criminogenic need scales, looking at the following factors : criminal involvement, history of violence, prison misconduct, re-entry substance, negative social cognition, low self-efficacy/optimism, low family support, re-entry financial, and re-entry employment expectations.

43. Plaintiffs contend that the Board has simply taken on the judicial role of sentencing for the purpose of increasing punishment, and not necessarily rendering parole denials upon the decision to hold Plaintiffs in prison past their MPI.

44. According to the affirmations of Plaintiffs attached to this Complaint, the Board has been failing to carry out its appropriate role of evaluation of Plaintiffs preparedness to return to their communities, and instead has been playing a re-sentencing role by relying heavily on outdated guidelines, i.e., the seriousness of the offense and prior criminal history, rather than Plaintiffs' accomplishments, readiness for re-entry, and objective risk.

45. The Board has declined to utilize mandated risk and needs principals in order to measure Plaintiffs rehabilitation and likelihood of success upon release.

46. No written procedures were utilized by the board to provide any guidance about the interplay between the COMPAS, the case management plan, and the existing statutory factors, other than the seriousness of the offense and prior criminal history of the Plaintiffs.

47. The Board has routinely and continues to ignore the risk score levels of the Plaintiffs and issues parole denials to people who have the lowest scores. See Affirmations of Plaintiffs.

48. Plaintiffs contend that they are entitled to have the Board give genuine consideration and due regard to the factors prescribed by the Board's pre-2011 policies, although partly discretionary, which is still subject to **Ex Post Facto** analysis when there are sufficiently discernible criteria to suggest to a reviewing body that the new retroactive policies are being applied against the Plaintiffs' interest.

49. Plaintiffs contend that the Board defaulted in its duty to consider factors other than the underlying offense and risk to public safety, and failed to address any of the factors favoring release.

50. Plaintiffs, prior to their conviction and sentencing, are entitled to know not only their maximum possible punishment, but also their chances of receiving early release, since this too is a relevant factor in the plea bargaining calculus.

51. As a consequence, the post-2011 parole regime placed primary consideration on the seriousness of the offense and prior criminal record as the dominant factor in evaluating parole applications, especially where there is significant evidence that the Board acted upon policies that were established after Plaintiffs crime and conviction.

52. Plaintiffs also contends that there exists a liberty interest which is entitled to constitutional protection under the Due Process Clause, where New York State has established a sentencing scheme that creates a legitimate expectation of release from prison.

## PRAYER FOR RELIEF

53. **WHEREFORE**, Plaintiffs respectfully pray that this Court advance their case on the docket, order a speedy hearing of the earliest practicable date, cause this case to be in every way expedited, and upon such hearing to:

A.    Appoint counsel pursuant to Rule 23 (g) of the Federal Rules of Civil Procedure;

B. Issue a declaratory judgment that Defendants' acts, policies, practices, and procedures complained of herein violated Plaintiffs rights as secured under the Civil Rights Acts of 1871; Article 1, § 10 to the United States Constitution; Fourteenth Amendment to the United States Constitution; and 42 U.S.C.A. § 1983.

C. Grant Plaintiffs and the class they represent a preliminary and permanent injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining the Defendants, their officers, agents, successors, employees, attorneys, assigns and other representatives, and all those acting in concert with them at their discretion, from engaging in parole policy or practice which violates Ex Post Facto Clause and Due Process Clause.

D. Retain jurisdiction over this action to assure full compliance with the Orders of this Court and with applicable law and require Defendants to file such reports as the Court deems necessary to evaluate such compliance.

E. Require Defendants to conduct new parole hearings forthwith according to the factors enumerated in Executive Law § 259-i (2)(c), prior to the enactment of Chapter 62 of the Laws of 2011;

F. Grant Plaintiffs, and/or counsel, the class they represent their attorney fees, costs, and disbursements; and

G. Grant such additional relief as the Court deems proper and just.

Dated : December 9 , 2016
   Otisville, New York

Nahshon Jackson 95A2578

Charles Ransom  85A1643

Dexter Robinson 95A1921

Darryl Kroger 90A5393

Robert Harris 79C0370

Patrick Snow 94A2666

Kevin Elmore 87A4968

Larry Ross 96A1571

Davey Shark 88A9726

Michael Hopps 95A9618

Edward Myers 93B1507

PRIORITY MAIL

neopost
12/13/2016
US POSTAGE $006.45⁰

ZIP 10963
041L11251097

RECEIVED
DEC 14 2016

Hon. Ruby J. Krajick, Clerk
United States District Court
Southern District of New York
500 Pearl Street
New York, N.Y. 10007